## HUDGINS *vs.* GLASS.

[ACTION FOR FRAUD ON EXCHANGE OF MULES.]

1. *Estrays.*—Under the provisions of the Code, (§§ 1062-91,)) the taker-up of an estray may place the animal in the possession of another person, to be kept for him.; and the escape of the animal before the expiration of twelve months does not affect the title which the law confers on the taker-up at the expiration of that period.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. WILLIAM M. BROOKS.

THIS action was brought by James Hudgins, against William M. Glass, to recover damages for an alleged fraud or deceit perpetrated by the defendant in an exchange of mules between him and the plaintiff. The fraud was alleged to consist in the fact, that the defendant, at the time of the exchange, had no title to the mule which he traded to the plaintiff, and well knew that fact at the time the contract was made. No pleas appear in the record. The bill of exceptions is as follows:

"On the trial of this cause, the following facts appeared in evidence: The plaintiff authorized one J. J. Tune to swap off a mule which he owned, and to continue swapping until he made better or worse for plaintiff. Tune swapped off plaintiff's said mule, and, before returning home, met with defendant, who bantered him for a swap. Tune and defendant swapped even. Defendant did not say whether the mule which he traded off belonged to him, or to some other person. Tune took the mule to plaintiff, and explained to him the swap which he had made. Plaintiff received the mule from Tune, and

afterwards traded it to one Johnson; and the mule finally came into the hands of one Thompson. Said Tune further testified, that afterwards, to-wit, in the summer of 1857, he saw the same mule which he had obtained from the defendant in the possession of one Josiah Sanders; and that the plaintiff's said mule, traded by him to defendant as aforesaid, was worth $65 or $70 at the time of the trade. Said Sanders, being then called as a witness for plaintiff, testified, that he had claimed and obtained said mule from Thompson; that said mule had been taken up·and strayed by one Booker Brown in said county, about the 1st September, 1855; that said Brown, in the spring of 1856, saying that he had no corn to feed said mule, proposed that witness should take and keep her until the expiration of the twelve months, and then return her to him,—stating at the time that the mule was an estray, and that he intended to hold on to her until some one having a better claim should call for her; that witness agreed to this proposition, took said mule home with him, and kept her until some two or three weeks before the expiration of the twelve months, when she escaped from him; that after the expiration of said twelve months, being unable to find her, he paid said Brown $70 as damages for her, with about $20 costs, besides losing his own time and expenses while hunting her; that he found her, in the spring of 1857, in the possession of said Thompson, laid claim to her, and obtained her. The trade between Tune and defendant was made in February, 1857. After said mule had been recovered by Sanders, the trade between plaintiff and said Johnson was canceled, and plaintiff returned to him the horse which he had obtained in exchange for said mule.

"The above being the substance of all the evidence in the cause, the court charged the jury as follows: ·

"'1. That if they believed from the evidence that Booker Brown had taken up and strayed the mule which plaintiff, through Tune as his agent, had obtained in exchange from defendant; and that Brown had delivered said mule to Sanders, to take care of; and that she had

escaped from Sanders two or three weeks before the expiration of the twelve months from the time she was strayed; and that said Sanders, after the expiration of said twelve months, and before February, 1857, paid said Brown for said mule; and that defendant was found in possession of said mule in February, 1857, and traded her to plaintiff,—then the plaintiff cannot recover in this action.'

"'2. That if they believed all the evidence in the case, the plaintiff is not entitled to recover.'

"The plaintiff excepted to these charges, and then requested the court to instruct the jury, 'that if they believed from the evidence that Booker Brown was in possession of said mule before defendant obtained possession of her, and that said defendant was afterwards found in possession of her, and that defendant had not shown any claim of title to her, then, in presumption of law, said Brown's title to said mule would be superior to that of defendant.' This charge the court gave, but with the following addition, or qualification: 'that if the jury believed that said Brown claimed the mule as an estray, and not otherwise, and that she escaped before the expiration of the twelve months from the time she was strayed, and fell into the defendant's possession, then, in presumption of law, the title of said Brown was not superior to that of defendant;' to which qualification of the charge asked the plaintiff excepted.

"The plaintiff also asked the court to charge the jury, 'that if they found from the evidence that Brown had taken the mule into his possession, and had strayed her, and, while in possession, had said that she was an estray, and that he would hold her until some one having a better claim should call for her, then the jury might consider this claim, thus set up, as a circumstance tending to show that said Brown claimed her by virtue of his possession.' This charge the court also gave, but with the following addition, or qualification: 'that if they believed that Brown only claimed his possession of said mule under the estray law, then his possession gave him no title or claim superior to that of the defendant, if the

mule escaped from Sanders, to whose care the defendant had committed her, before the expiration of twelve months from the time said Brown had strayed her;' to which qualification of the charge asked the plaintiff also excepted."

In consequence of the rulings of the court above stated, the plaintiff was compelled to take a nonsuit, which he now moves to set aside; assigning as error all the rulings of the court to which he reserved exceptions.

I. W. GARROTT, for appellant.

JOHN F. VARY, contra.

A. J. WALKER, C. J.—The statutes found in the Code, from section 1062 to section 1091 inclusive, constitute the taker-up of an estray, who does the acts prescribed in those statutes, the bailee of the animal for twelve months, unless it is claimed by the owner; and vests him with the owner's title after twelve months. He is a law-appointed bailee, and is invested with a qualified property in the animal which is the subject of the bailment, and might, by virtue of that qualified property, maintain an action for the recovery of such animal. If the animal should escape from him during the bailment for twelve months, he might pursue and recapture it, or recover it from the person into whose possession it might happen to pass. The fact that the property escaped from the possession of the "taker-up," a few weeks before the expiration of the twelve months necessary to vest him with a title, would not prevent the forfeiture of the former owner's title to him. The taker-up is responsible to the owner for the negligent escape of the animal; and, even though the escape may have resulted from negligence, the rights of the taker-up as a bailee during the twelve months, and to a title after the expiration of the twelve months, would not be lost in consequence of such escape.

The forfeiture of the owner's title to the taker-up does not depend upon the fact, that the possession of the latter is continuous and without any interruption during the twelve months. If it did, the escape of the animal three

days (or even one day) before the end of the twelve months, would defeat the bailee's title; and the taker-up might be held responsible for the value of the property to the owner, without any right of recapture.

It may be that the taker-up might so act in reference to an escaped animal, that his conduct would evidence an abandonment of his right as a statutory bailee; and that the making of the report specified in section 1077 of the Code, would be conclusive evidence of such abandonment. But we need not go into this question of abandonment in this case, as the evidence does not show any facts which could be deemed an abandonment of the right of the taker-up, either as a bailee, or to the title of the property after the expiration of twelve months. The failure to recapture property before the expiration of the statutory period of bailment, which had escaped only two or three weeks before, would not terminate the bailment, nor prevent the title of the owner from vesting in the taker-up.

It would work no forfeiture of the right of the taker-up, if he employed another to keep the estray for him.

The foregoing views of the law are irreconcilable with the charges given, and the refusal of the charges asked; and therefore the judgment of the court below is reversed, and the cause remanded.